1  David Nied (SBN 136413)
   Allison M. Dibley (SBN 213104)
2  **AD ASTRA LAW GROUP, LLP**
   582 Market Street, Suite 1015
3  San Francisco, CA 94104
   Telephone: (415) 795-3579
4  Facsimile:  (415) 276-1976
   dnied@astralegal.com
5  adibley@astralegal.com

6  E. Russell Tarleton (*Pro Hac Vice* pending)
   **SEED IP LAW GROUP PLLC**
7  701 5th Avenue, Suite 5400
   Seattle, WA 98104
8  Telephone: (206) 622-4900
   Facsimile: (206) 682-6031
9  RussT@SeedIP.com

10 Attorneys for Plaintiffs
   MUSIC Group Macao Commercial Offshore Limited and
11 MUSIC Group Services US, Inc.

12             IN THE UNITED STATES DISTRICT COURT

13      NORTHERN DISTRICT OF CALIFORNIA (SAN FRANCISCO DIVISION)

14 MUSIC Group Macao Commercial Offshore     )  Civil Action No.
15 Limited, a Macao entity, and MUSIC Group  )  (W.D. Wash. Civil Action No. 14-cv-01790
   Services US, Inc., a Washington Corporation )  RSM)
16                                            )
              Plaintiffs,                     )  NOTICE OF MOTION AND MOTION TO
17                                            )  COMPEL DISCOVERY;
        v.                                    )  MEMORANDUM OF POINTS AND
18                                            )  AUTHORITIES IN SUPPORT THEREOF.
   John Does I-IX                             )
19                                            )  Date: _____
              Defendants.                     )  Time: _____
20                                            )  Ctrm.:_____

21 _____

22             **NOTICE OF MOTION AND MOTION**

23

24 **TO ALL PARTIES, NON-PARTY TWITTER, AND THEIR ATTORNEYS OF RECORD:**

25      **PLEASE TAKE NOTICE** that on _____, at __:___ ___.m., or as soon

26 thereafter as this matter may be heard in the courtroom of _____, located at 450

27 Golden Gate Avenue, San Francisco, California 94102, Plaintiffs MUSIC Group Macao

28 Commercial Offshore Ltd., and MUSIC Group Services US, Inc. (collectively "MUSIC Group" or

                                    -1-

"Plaintiffs") will and hereby do move this Court for an Order compelling non-party Twitter to comply with Music Group's Second Amended Subpoena, served on Twitter on September 24, 2014.

This motion is brought pursuant to Rules 37 and 45 of the Federal Rules of Civil Procedure on the grounds that, after Plaintiffs and Twitter met and conferred, Twitter still refuses to produce the documents and information described in the Second Amended Subpoena. This motion is based on this Notice of Motion and Motion and the following Memorandum of Points and Authorities in Support Thereof, all files and records in this action, oral argument, and such additional matters as may be judicially noticed by the Court or may come before the Court prior to or at the hearing on this matter.

<b><u>MEMORANDUM OF POINTS AND AUTHORITIES</u></b>

**I.      CERTIFICATION UNDER LOCAL RULE 37**

Under Local Rule 37, Plaintiffs have conferred on numerous occasions both by phone and email correspondence with counsel for Twitter regarding production of the discovery requested. (Tarleton Dec. ¶3.) On October 22, 2014, Plaintiffs' counsel contacted Twitter by telephone to discuss resolving Twitter's failure to produce the discovery requested in the Subpoena. Twitter's counsel reiterated Twitter's remaining objection on First Amendment grounds. The parties could not reach agreement on whether Twitter had standing to raise the First Amendment objection, whether the First Amendment was a basis to object, and whether the Ninth Circuit required a First Amendment analysis by the Court when it authorized the discover. Moreover, although the Court in Seattle had issued the order for early discovery, Twitter would not agree to have the Court in Seattle decide the Motion to Compel. (Tarleton Dec. ¶4.) Hence, Plaintiffs are required to file the Motion to Compel in the instant Court with a request to transfer the same to the Seattle Court. (Tarleton Dec. ¶5.)

**II.     FACTS**

**A.      The Complaint**

On April 25, 2014, Plaintiffs filed a complaint, attached to the Declaration of E. Russell Tarleton as Exhibit A, in the Western District of Washington against Defendants John Does I-IX

-2-
<b>Motion to Transfer Plaintiffs' Subpoena-Related Motions to Issuing Court</b>

1 | for violations of the Computer Fraud and Abuse Act, unfair competition, violations of the Lanham
2 | Act, cyberpiracy, intentional interference with contractual or business relations, defamation, breach
3 | of contract and copyright infringement. (Tarleton Dec. ¶6.)

4 | John Does I-IX are users of the names "@FakeUli" and "@NotUliBehringer" on the
5 | internet site Twitter.  Defendants used the Twitter accounts "FakeUli" and "NotUliBehringer" to
6 | produce and publish disparaging remarks about MUSIC Group, MUSIC Group employees and
7 | MUSIC Group CEO, Uli Behringer, from at least March 3, 2010 until April 24, 2014. The users of
8 | the Twitter accounts used features in Twitter that cause their Tweets to come up in search results
9 | for the real MUSIC Group Twitter account, causing anyone searching for MUSIC Group's Twitter
10 | account to see the disparaging Tweets.  Because of the anonymous nature of Twitter, the identities
11 | of the Doe Defendants are not known to Plaintiffs.

12 | **B.     The Subpoenas**

13 | On July 18, 2014, the issuing court in the Western District of Washington entered an Order
14 | Granting Plaintiffs' Motion for Expedited Discovery on third party Twitter, Inc., to determine the
15 | identity of the Doe Defendants, attached as Exhibit B.  (Tarleton Dec. ¶7.) Twitter, Inc. was served
16 | with a Subpoena on August 5, 2014, and an Amended Subpoena on September 18, 2014.  The
17 | Amended Subpoena, attached as Exhibit C, requested discovery related to the identities of the users
18 | of the Twitter handle "@FakeUli," including documents showing the name, address, email address
19 | and any proxy address of the owner of the account. (Tarleton Dec. ¶8) Twitter responded to the
20 | Amended Subpoena on September 23, 2014, objecting to the requested discovery because the
21 | issuing court did not include the requisite First Amendment findings.  Appended hereto as Exhibit
22 | D is a copy of a letter dated October 8, 2014, from counsel for Twitter objecting to the subpoena.
23 | (Tarleton Dec. ¶9.) A Second Amended Subpoena, attached as Exhibit E, was served on September
24 | 24, 2014, requesting production of discovery related to the "@NotUliBehringer" Twitter account,
25 | (Tarleton Dec. ¶10), and on October 8, 2014, Twitter objected to the Second Amended Subpoena
26 | on the same First Amendment grounds, and stating that they had no responsive documents because
27 | the Twitter account information was deleted.

28 |

1    To date, Twitter has failed to produce any discovery requested in the Subpoenas. (Tarleton

2  Dec. ¶11).

3  **III.    ARGUMENT**

4          **A.    <u>Summary of the Law</u>**

5          Rule 45 of the Federal Rules of Civil Procedure provides the framework for securing

6  documents, electronically stored information, testimony and tangible things relevant to a pending

7  litigation from non-parties through the use of subpoenas. (Fed. R. Civ. P. 45 (a), (b)). It is well

8  settled that the scope of a Rule 45 subpoena is informed by Rule 26, which governs civil discovery

9  generally. (*See, e.g.*, Fed. R. Civ. P. 26 Advisory Committees Note to 1946 Amendments; *Garner*

10 *Const., Inc. v. Int'l Union of Operating Engineers*, 2007 WL 4287292, *2 (W.D. Wash. Dec. 4,

11 2007); *Gonzales v. Google, Inc.*, 234 F.R.D. 674, 680 (N.D. Cal. 2006).)

12         Pre-trial discovery is ordinarily "accorded a broad and liberal treatment." (*Hickman v.

13 Taylor*, 329 U.S. 495, 507, 67 S.Ct. 385, 392, 91 L.Ed. 451 (1947); *United States v. Meyer*, 398

14 F.2d 66, 73 (9th Cir. 1968).) If no claim of privilege applies, a party can be compelled to produce

15 evidence regarding any matter "relevant to the subject matter involved in the pending action" or

16 "reasonably calculated to lead to the discovery of admissible evidence." (*See* Fed. R. Civ. P.

17 26(b)(1).) "Relevant information need not be admissible at the trial if the discovery appears

18 reasonably calculated to lead to the discovery of admissible evidence." (*Id.*) This broad right of

19 discovery is based on the general principle that litigants have a right to "every man's evidence,"

20 (*United States v. Bryan*, 339 U.S. 323, 331, 70 S.Ct. 724, 730, 94 L.Ed. 884 (1950)), and that wide

21 access to relevant facts serves the integrity and fairness of the judicial process by promoting the

22 search for the truth. (*See Shoen v. Shoen*, 5 F.3d 1289, 1292 (9th Cir. 1993).) The Federal Rules

23 also provide federal courts with the power to compel compliance with subpoenas and disclosure

24 requests that seek relevant information. (*See* Fed. R. Civ. P. 45(d)(2)(B)(i).)

25         The Western District of Washington has recognized that a subpoena that seeks to discover

26 the identity of a protected anonymous Internet user must satisfy a three-part test, subject to

27 balancing by the court. First, Plaintiffs must make reasonable efforts to give the Defendant

28 adequate notice of the attempt to discover their identity. Second, Plaintiffs must allege a facially

-4-

1 valid cause of action, providing a factual and legal basis for believing the speech is actionable. And

2 finally, Plaintiffs must demonstrate that the specific information sought by the subpoena is

3 necessary to identify the Defendant, and that the Defendant's identity is relevant to the case.

4 (*SaleHoo Grp., Ltd. v. ABC Co.*, 722 F. Supp. 2d 1210, 1215-16 (W.D. Wash. 2010).)

5   The Northern District of California has adopted a similar test, requiring: (1) that the plaintiff

6 persuade the court that there is a real evidentiary basis for believing the defendant has engaged in

7 wrongful conduct that has caused real harm to the plaintiff, and (2) comparing and balancing the

8 harms to the plaintiff and the harms to the defendant. (*Highfields Capital Mgmt., L.P. v. Doe*, 385

9 F. Supp. 2d 969, 974 (N.D. Cal. 2005).)

10   Fed. R. Civ. P. 45 authorizes the district court, in its discretion, to impose a wide range of

11 sanctions when a party fails to comply with the rules of discovery or with court orders enforcing

12 those rules. (*See* Fed. R. Civ. P. 45(g).)

13   **B.**  <u>**The Discovery Requested is Relevant to Plaintiffs' Case**</u>

14   As set forth in more detail in Plaintiffs' Motion for Expedited Discovery, Plaintiffs filed this

15 action for cyber fraud and abuse pursuant to The Computer Fraud and Abuse Act, 18 U.S.C.A.

16 § 1030; cyberpiracy pursuant to Section 43(d) of the Lanham Trademark Act, 15 U.S.C.A.

17 § 1125(d); trademark infringement, trade name infringement and false designation of origin

18 pursuant to Section 43(a) of the Lanham Trademark Act, 15 U.S.C.A. § 1125(a); for unfair

19 competition under Federal and Washington common law; for intentional interference with

20 contractual and business relations; and for defamation.

21   In order to obtain the identity of the John Doe Defendants, Plaintiffs require immediate

22 discovery on a third party, Twitter, Inc., ("Twitter") a global Internet media company, with its

23 principal place of business located at 164 South Park, San Francisco, CA 94107. As alleged in the

24 Complaint (¶ 2), Defendants John Doe are unknown defendants who have posted and continue to

25 post false and defamatory statements on the web site "Twitter," found at http://twitter.com, under

26 the assumed names "NotUliBehringer" and "Fake Uli Behringer." The true name or names of

27 Defendants John Does, aka "NotUliBehringer" and "Fake Uli Behringer," are unknown to

28 Plaintiffs, but readily available to Twitter.

The Twitter account https://twitter.com/NotUliBehringer on Twitter under the assumed name "NotUliBehringer," and its postings on or near March 13, 2014, and continually to and including April 24, 2014, as alleged in the complaint, are specific enough to permit identification of the unknown party through reasonable discovery. The Twitter account https://twitter.com/fakeuli on Twitter under the assumed name "Fake Uli Behringer" and its postings on or near March 3-6, 2010, March 9, 2010, March 10, 2010, March 23-27, 2010, April 2, 2010, June 9, 2010, and June 10, 2010, as alleged in the complaint, are specific enough to permit identification of the unknown party through reasonable discovery.

### C. MUSIC Group has Satisfied the Three-Part Test for Discovering Anonymous Internet Users

The Twitter account of "FakeUli" has been put on notice of the attempt to discover their identity by all reasonable means, including filing complaints with Twitter regarding the account. Twitter informed the users of the account that they were being investigated as a result of the complaints.

Twitter argues that the three-part test of *SaleHoo* has not been satisfied because MUSIC Group has failed to establish prima facie evidence of at least one actionable claim. However, MUSIC Group has demonstrated every element of at least defamation, and every element of breach of contract that the current discovery allows for.

### 1. MUSIC Group has Made a Prima Facie Case of Defamation

Under Washington law, to make out a prima facie case of defamation, a plaintiff must show falsity, an unprivileged communication, fault, and damages. (*Mohr v. Grant*, 153 Wash.2d 812, 108 P.3d 768, 773 (2005).) A statement is defamatory if it tends to harm the reputation of another to the extent of lowering him in the estimation of the community or to deter third persons from associating or dealing with him. (*Right-Price Recreation, LLC v. Connells Prairie Community Council*, 146 Wash. 2d 370, 46 P.3d 789 (2002).) Defamation per se is present when the statement alleges that the plaintiff (1) committed a serious crime; (2) has a loathsome disease; (3) is unchaste; or (4) has conduct incompatible with the plaintiff's business, trade, profession, or office. (*Davis v. Fred's Appliance, Inc.*, 171 Wash. App. 348, 287 P.3d 51 (Div. 3 2012); *Schmalenberg v. Tacoma*

1     *News, Inc.*, 87 Wash. App. 579, 943 P.2d 350 (Div. 2 1997).) When the person being defamed is a

2     public figure, the burden of proof is that of actual malice. (*Duc Tan v. Le*, 300 P.3d 356 (Wash.

3     2013).) In this case, the user of the Twitter handle "Fakeuli" has made malicious, defamatory

4     statements, which the user knew to be untrue at the time of writing. For example, the user of the

5     "Fakeuli" account has stated that MUSIC Group intentionally designs its products to break in 3-6

6     months (Compl. Ex. 2, at 2); that MUSIC Group encourages domestic violence and misogyny (*Id.*

7     at 8); and that Mr. Behringer engages with prostitutes. (*Id.* at 3).

8        In order to meet the "unprivileged communication" element of defamation, the defamatory

9     remarks must be published to one or more third persons. (*Pate v. Tyee Motor Inn, Inc.*, 77 Wash.

10     2d 819, 467 P.2d 301 (1970).) The Tweets of "Fakeuli" were made public to millions of Twitter

11     users, and the account had dozens of "followers" who would have been notified of, and received,

12     these Tweets in real time. (Compl. Ex. 2, at 2.)

13        In Washington, damages do not need to be proven when the statements are defamatory per

14     se, as is the case with the "Fakeuli" Twitter user's statements such as that MUSIC Group

15     intentionally creates products that break in 3-6 months, engages in criminal activity such as

16     domestic violence, and that MUSIC Group's CEO engages with prostitutes. (*Valdez-Zontek v.*

17     *Eastmont School Dist.*, 154 Wash. App. 147, 225 P.3d 339 (Div. 3 2010); *Maison de France, Ltd. v.*

18     *Mais Oui!, Inc.*, 126 Wash. App. 34, 108 P.3d 787 (Div. 1 2005).) Furthermore, when the

19     statements were made with actual malice, as they were here, the jury may award presumed

20     damages. (*Caruso v. Local Union No. 690 of Intern. Broth. of Teamsters, Chauffeurs,*

21     *Warehousemen and Helpers of America*, 100 Wash. 2d 343, 354, 670 P.2d 240, 246 (1983).)

22     However, even if the statements were not defamatory per se, or stated with malice, MUSIC Group

23     has suffered damages by causing other Twitter users, including potential or current customers of

24     MUSIC Group to believe that MUSIC Group intentionally creates poor products and engages in

25     criminal activity, thus damaging the reputation of MUSIC Group within the audio equipment

26     industry.

27     ///

28     ///

2. <u>MUSIC Group has Made a Prima Facie Case of Breach of Contract for all Elements Under MUSIC Group Control</u>

The Court in *SaleHoo* recognized that because discovery will be in its earliest stages when trying to determine the identity of an anonymous defendant, it may be impossible for all elements of a cause of action to be shown. (*SaleHoo Grp., Ltd. v. ABC Co.*, 722 F. Supp. 2d 1210, 1216 (W.D. Wash. 2010).) The three-part test of *SaleHoo* therefore only requires that those elements that are in the control of the plaintiff be shown because "plaintiff at an early stage of the litigation may not possess information about the role played by particular defendants or other evidence that normally would be obtained through discovery." (*Id.*)

Breach of contract exists when a valid contract's terms have been materially breached, resulting in damages. The Employment Agreement attached to the Complaint as Exhibit 5 is the standard employment contract that all employees of MUSIC Group are required to enter into. Although defendants are unknown at this time, the Tweets consistently reference being fired from MUSIC Group, and thus imply that the Twitter user controlling the "Fakeuli" account is a previous employee of MUSIC Group. Evidence related to the specific identities of the defendants is currently out of the control of MUSIC Group because Twitter has not yet complied with the subpoena.

The Employment Agreement contains a non-disparagement clause at paragraph 10.4. The non-disparagement clause requires that employees will not make any disparaging remarks about the company, or make statements that will cast doubt upon the business acumen or judgment of MUSIC Group. All employees and ex-employees of MUSIC Group have agreed to the non-disparagement clause in consideration of their employment at MUSIC Group. The tweets, as discussed above, were highly disparaging in their nature, alleging MUSIC Group has intentionally bad judgment and illegal business practices. The intentional disparagement of MUSIC Group on Twitter by the user of the "Fakeuli" account constitutes a material breach of the Employment Agreement that they would have signed with MUSIC Group as an employee. These Tweets are available to be seen by all Twitter users, including current and potential customers of MUSIC Group. As a result of these tweets, MUSIC Group's reputation in the music industry has been

-8-

1   lowered, causing significant damage to the good-will and brand recognition that MUSIC Group has

2   built.

3          3.      A Balance of the Harms to MUSIC Group and the Defendants Favors
                   MUSIC Group
4

5          The second prong of the First Amendment test in the Northern District of California is a

6   balancing of the harms to the Defendants and Plaintiffs.  In this case, the weight of the harm done to

7   MUSIC Group outweighs the potential for harm to the Defendants.  The Court in *Highfields*

8   *Capital management, L.P.* found that the primary harm caused to a defendant in this situation is a

9   potential chilling effect on protected free speech.  However, as discussed above, the speech made

10  by the users of the Twitter handle @FakeUli does not fall under a protected free speech category.

11  Unmasking the identity of the users of the FakeUli account would only potentially chill defamatory

12  speech, and speech that is a material breach of an employment contract.  This does not present a

13  significant harm to the Defendants or the general public.

14         On the other hand, the damage caused to the goodwill and name of MUSIC Group by

15  Defendants freely publishing defamatory remarks on Twitter is significant.  The Twitter users

16  intentionally crafted their disparaging Tweets such that any customers of MUSIC Group searching

17  for official MUSIC Group Tweets would find the @FakeUli Tweets as well.

18         The harm caused to MUSIC Group by having their current and potential customers see these

19  defamatory Twitter posts outweighs any harm caused to the Defendants by being unmasked for

20  their defamatory actions.

21  ///

22  ///

23  ///

24  ///

25  ///

26  ///

27  ///

28  ///

## IV.   CONCLUSION

For the reasons set forth above, Plaintiffs respectfully request the Court grant their motion to compel Twitter to produce discovery on the identity of the user of Twitter account "Fakeuli."

Dated:  November 25, 2014

AD ASTRA LAW GROUP, LLP

By_____
Allison M. Dibley

**SEED Intellectual Property Law Group PLLC**

E. Russell Tarleton, WSBA No. 17,006
701 Fifth Avenue, Suite 6300
Seattle, Washington 98104-7092
(206) 622-4900

Attorneys for Plaintiffs MUSIC GROUP MACAO
COMMERCIAL OFFSHORE LIMITED and
MUSIC GROUP SERVICES US, INC.