UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

San Francisco Division

| | |
|---|---|
| MUSIC GROUP MACAO COMMERCIAL OFFSHORE LIMITED, et al.,<br><br>    Plaintiffs,<br><br>    v.<br><br>JOHN DOES,<br><br>    Defendant. | Case No. 14-mc-80328-LB<br><br>**CORRECTED ORDER ON SUBPOENAS**<br><br>[ECF Nos. 1, 3, 16, 21] |

## INTRODUCTION

The order of January 6, 2015 (ECF No. 15)[1] is withdrawn and this opinion is substituted in its place. The court denies the plaintiffs' motion (ECF No. 3) to transfer this subpoena-enforcement proceeding to the United States District Court for the Western District of Washington. *See generally* Fed. R. Civ. P. 45(f); *infra*, Analysis, Part I. The court grants the motion of Public Citizen, Inc. to file an *amicus* brief opposing enforcement of the plaintiffs' subpoenas. (ECF No. 19.) The court thanks Public Citizen for its excellent and informative brief. The court has weighed Public Citizen's concerns in ruling on the subpoenas. The court finds this matter suitable for determination without oral argument and vacates the hearing that is set for March 19, 2015. *See* Civ. L.R. 7-1(b).

---

[1] Record citations are to material in the Electronic Case File ("ECF"); pinpoint citations are to the ECF-generated page numbers at the tops of the documents.

ORDER ENFORCING SUBPOENA 14-80328 LB

The plaintiffs seek to enforce two subpoenas against nonparty Twitter, Inc. Those subpoenas would compel Twitter to reveal identifying information for the anonymous Twitter users who are the Doe defendants. The district court for the Western District of Washington has ruled that the plaintiffs may obtain that information. (ECF No.2 at 30-33.) The lone substantive issue before this court is whether the subpoenas unduly infract the Doe defendants' First Amendment right to speak anonymously. For the reasons stated below, the court holds that the defendants' First Amendment rights outweigh plaintiffs' need for the requested information. *See, e.g., Highfields Capital Mgmt., L.P. v. Doe*, 385 F. Supp. 2d 969 (N.D. Cal. 2005). The court thus denies the plaintiffs' motion to enforce the subpoenas. *See infra*, Analysis, Parts II-III.

**STATEMENT**

The underlying case is primarily one for defamation with attendant claims for copyright infringement, unfair competition, and breach of contract. (*See* Complaint - ECF No. 2 at 5-19.) The plaintiffs, whom the court will collectively call "Music Group," filed this case against John Doe defendants in the United States District Court for the Western District of Washington. (*Id.*) Music Group alleges in sum that the defendants have used anonymous accounts on the Internet service Twitter — under the account names @*FakeUli* and @*NotUliBehringer* — to "publish disparaging remarks about" Music Group, its employees, and its CEO, Uli Behringer. (ECF No. 1 at 3.) According to Music Group, the Doe defendants have used these accounts to make "malicious, defamatory statements, which the [defendants] knew to be untrue"; this includes claiming that Music Group "designs its products to break in 3-6 months," that Music Group "encourages domestic violence and misogyny," and that the company's CEO, Mr. Behringer, "engages with prostitutes." (*See* ECF No. 1 at 7.)

Because the relevant Twitter accounts are anonymous, Music Group has not been able to serve process on the defendants. Music Group has thus subpoenaed Twitter (who is not a party to this suit) to reveal the identities of the @*FakeUli* and @*NotUliBehringer* users so that it can serve the complaint on them. More precisely, Music Group's subpoena would have Twitter produce "the name, address, email address and any proxy address" of the accounts' owners. (ECF No. 1 at 3; ECF No. 2 at 35-39, 44-48 (subpoenas).)

The Washington district court has already granted Music Group expedited discovery to determine the identities of the Doe defendants. (ECF No. 2 at 30-33.) The Washington court held that Music Group had shown "good cause" for the requested discovery. (*Id.*) Given that order, Music Group subpoenaed Twitter for the identifying information. (ECF No. 2 at 35, 41-45.) So far, Twitter has not produced information in response. "Moreover," according to Music Group, "although the Court in [Washington] has issued the order for early discovery, Twitter [which is headquartered in San Francisco] would not agree to have the Court in [Washington] decide" a motion to compel compliance with the subpoenas. (ECF No. 2 at 2, ¶ 5.)

Music Group then filed this miscellaneous proceeding, asking this court to enforce the subpoenas. (ECF No. 1.) Twitter "takes no position on the merits" of Music Group's motion. (ECF No. 12 at 2 and n. 1.) Twitter states only that this court must make the necessary legal analysis "to ensure that the appropriate First Amendment standard is met and that the [Doe defendants'] right to anonymous free speech is protected." (*Id.*) Twitter also says that, if the court rules in Music Group's favor, it will respond to the subpoenas. (*Id.*)

## GOVERNING LAW

"It is well established that the First Amendment protects the right to anonymous speech." *Art of Living Found. v. Does 1-10*, No. 10-5022, 2011 WL 5444622, *3 (N.D. Cal. Nov. 9, 2011) (citing *McIntyre v. Ohio Elections Comm'n*, 514 U.S. 334, 342 (1995)). "However, the right to anonymity is not absolute." *Art of Living*, 2011 WL 5444622 at *4. "Where anonymous speech is alleged to be unlawful, the speaker's right to remain anonymous may give way to a plaintiff's need to discover the speaker's identity in order to pursue its claim." *Id.*

In *In re Anonymous Online Speakers*, 661 F.3d 1168, 1174-77 (9th Cir. 2011), the Ninth Circuit reviewed the developing tests in the area of anonymous online speech. Of the various approaches that *Anonymous Online Speakers* discussed, the parties urge the court to use the test enunciated in *Highfields Capital Mgmt., L.P. v. Doe*, 385 F. Supp. 2d 969 (N.D. Cal. 2005). "In choosing the proper standard to apply, the district court should focus on the 'nature' of the [defendant's] speech . . . ." *Art of Living*, 2011 WL 5444622 at *5 (citing *Anonymous Online Speakers*, 661 F.3d at 1177 ("[T]he nature of the speech should be a driving force in choosing a

standard by which to balance the rights of anonymous speakers in discovery disputes.") and *SI03, Inc. v. Bodybuilding.com, LLC*, 441 F. Appx. 431, 431-32 (9th Cir. 2011) (same)).

The court agrees that *Highfields* is the correct standard for this case. The challenged speech here consists mainly of flatly derogatory statements about Music Group's CEO, and, apparently to a lesser degree, some criticism of the company's products that likely constitutes legitimate commercial criticism. The Ninth Circuit has indicated that the *Highfields* test is one of middling rigor, appropriate where, as here, the challenged speech falls somewhere beneath the most protected realm of "political, religious, or literary" discourse; is, in significant part, "commercial speech" that enjoy "lesser" protection; but may be more safeguarded than pure "fighting words and obscenity," which is "not protected by the First Amendment at all." *See Anonymous Online Speakers*, 661 F.3d at 1173, 1175-76; *Art of Living*, 2011 WL 5444622 at *5.

Under *Highfields*, a party seeking to discover the identity of an anonymous speaker must first "persuade the court that there is a real evidentiary basis for believing that the defendant has engaged in wrongful conduct that has caused real harm to the interests of the plaintiff." *Highfields*, 385 F. Supp. 2d at 975-76. If the plaintiff makes this showing, the court must then "assess and compare the magnitude of the harms that would be caused to the [plaintiffs' and defendants'] competing interests" by ordering that the defendant's identity be disclosed. *Id.* at 976. If such an assessment reveals that disclosing the defendant's identity "would cause relatively little harm to the defendant's First Amendment and privacy rights," but is "necessary to enable [the] plaintiff to protect against or remedy serious wrongs," then the court should allow the disclosure. *Id.*

## ANALYSIS

### I. THE COURT DENIES THE MOTION TO TRANSFER

Music Group has moved the court to transfer this subpoena-enforcement proceeding back to the Western District of Washington, the court that is hosting the underlying litigation and which issued the subpoenas in question. (ECF No. 3.) The court denies this motion under procedural Rule 45.

There is no question that Music Group's initial motion to compel Twitter to comply with the subpoenas is properly before this court; this is the "district where compliance [with the subpoenas]

is required." Fed. R. Civ. P. 45(d)(2)(B)(i). "When the court where compliance is required did not issue the subpoena," as is the case here, "it may transfer a motion under this rule to the issuing court if the person subject to the subpoena consents or if the court finds exceptional circumstances" warranting the transfer. Fed. R. Civ. P. 45(f). "The proponent of transferring the motion to the issuing court bears the burden of showing 'exceptional circumstances.'" W. Schwarzer *et al.*, *California Practice Guide: Federal Civil Procedure Before Trial* ¶ 11:2290.1 (Rutter Group 2014) (citing Fed. R. Civ. P. 45(f) advisory comm. notes to 2013 amends.) "The prime concern" in deciding Rule 45(f) transfer motions "should be avoiding burdens on local nonparties subject to subpoenas, and it should not be assumed that the issuing court is in a superior position to resolve subpoena-related motions." Fed. R. Civ. P. 45(f) advisory comm. notes to 2013 amends.

The court finds that no "exceptional circumstances" justify sending this motion back to the Western District of Washington. The court reaches this conclusion largely for the reasons that Twitter sets forth in opposing the transfer. (*See* ECF No. 11 at 2-7.)

## II. *HIGHFIELDS* — "REAL EVIDENTIARY BASIS"

The first prong of *Highfields*, again, requires the plaintiff to demonstrate that its claims rest on a "real evidentiary basis." *Highfields*, 385 F. Supp. at 975-76. "It is not enough for a plaintiff to plead and pray. Allegation and speculation are insufficient." *Id.* at 975. "[T]he plaintiff must adduce *competent evidence*" of each fact that is "essential" to "at least one of [its] causes of action." *Id.* at 975-76 (emphasis in original). It will help to notice that, according to the Ninth Circuit in *Anonymous Online Speakers*, this is a requirement of middling rigor. More demanding than the "good faith" or "motion to dismiss" standard that some courts have used, the *Highfields* "real evidentiary basis" prong is less demanding than the "most exacting" test, enunciated in *Doe v. Cahill*, 884 A.2d 451 (Del. 2005), which requires a plaintiff to submit "sufficient evidence" of each element of its claims "to survive a hypothetical motion for summary judgment" — and which *Anonymous Online Speakers* indicates is not appropriate to speech akin to that at issue here. *See Anonymous Online Speakers*, 661 F.3d at 1175-77.

A *prima facie* defamation claim under Washington law requires a false statement that was not

privileged, fault, and damage. *See Mohr v. Grant*, 108 P.3d 768, 773 (Wash. 2005). A statement is defamatory if it tends to harm the reputation of another by lowering him in the community's estimation or deterring third persons from associating with him. *Right-Price Recreation, LLC v. Connells Prairie Cmty. College*, 46 P.3d 789 (Wash. 2002). Damages need not be proven when a statement is defamatory *per se*. *E.g., Valdez-Zontek v. Eastman Sch. Dist.*, 225 P.3d 339 (Wash. App. 2010). Defamation *per se* exists where a statement alleges that the plaintiff: (1) committed a serious crime; (2) has a loathsome disease; (3) is unchaste; or (4) conducted himself in a manner incompatible with his business, trade, profession, or office. *Davis v. Fred's Appliance, Inc.*, 287 P.2d 51 (Wash. App. 2012); *Schmalenberg v. Tacoma News, Inc.*, 943 P.2d 350 (Wash. App. 1997).

**A. The *@NotUliBehringer* Account**

Under these rules, Music Group has not shown a "real evidentiary basis" for its defamation claim against the *@NotUliBehringer* user. The evidence that Music Group has submitted shows that this user's criticisms fall into two categories. The first consists of direct and indirect commercial criticism of Music Group's business practices and products. (*See* ECF No. 2 at 22-28.) This is legitimate "commercial speech" that enjoys First Amendment protection. *See Highfields*, 385 F. Supp. 2d at 975 (noting protected nature of "sardonic commentary on a public corporation . . . through irony and parody"). "These are views in which other members of the public may well be interested — and that defendant has a right to express anonymously." *Id.* The second group of comments by *@NotUliBehringer* are different; one comment indirectly accuses the company's CEO of tax evasion; another of traveling internationally while concealing things inside his body. (ECF No. 2 at 27.) The first comment is troubling, the latter merely crass. But they are both one-time comments. Even the tax-evasion remark would likely be read as what it is: one rant among countless others from someone with an obvious grudge against Music Group's CEO. The court does not think that, in the eyes of an ordinary person, this one-time comment would lower the CEO in the community's estimation. Even if it would, though, as the court will discuss below — and reading the statement "in context," which is "the only relevant way to view communications," *Highfields*, 385 F. Supp. 2d at 975 — this single comment does not outweigh the defendant's First

1   Amendment interest in anonymous speech.

2       **B.   The @*FakeUli* Account**

3       The allegations concerning @*FakeUli* are sterner. Music Group has shown a "real evidentiary

4   basis" for claiming that the @*FakeUli* user's postings have defamed it. According to Music

5   Group, the @*FakeUli* user has stated that Music Group intentionally designs its products to break

6   within three to six months, that the company "encourages domestic violence and misogyny," and

7   that the company's CEO "engages with prostitutes." (ECF No. 1 at 7.) If the first comment falls

8   within the realm of legitimate commercial criticism, the last comments are plainly defamatory and

9   are so *per se*. These comments would provide a "real evidentiary basis" for Music Group's

10   defamation claim. The court would note, though, that Music Group can pursue only comments that

11   are made about, or implicate, the company itself — and not those about its CEO, who is not a

12   party to this suit. *See Steam Press Holdings, Inc. v. Hawaii Teamsters and Allied Workers Union,*

13   *Local 996*, 302 F.3d 998, 1004 (9th Cir. 2002) ("The First Amendment . . . requires that the

14   challenged statement be 'of and concerning' the complainant." (citing *New York Times Co. v.*

15   *Sullivan*, 376 U.S. 254, 292 (1964)).

16       The one @*FakeUli* comment that could stand as actionably defamatory is the remark in which

17   @*FakeUli* accuses Music Group, as a company, of encouraging "domestic violence and

18   misogyny." For purposes of this prong of the *Highfields* analysis, the court will assume that this

19   comment can underwrite a viable defamation claim (though it is conceivable that, for reasons

20   discussed below, the claim may viewed as enjoying a First Amendment "privilege" that makes it

21   inactionable in defamation). The prongs of the *Highfields* analysis converge at this point, and the

22   court will discuss this matter, below, under the First Amendment "balancing" prong of the

23   *Highfields* test.

24       **III.   *HIGHFIELDS* BALANCING — COMPARING HARMS**

25       The balancing test under *Highfields* leads to the conclusion that the @*NotUliBehringer* user,

26   and the @*FakeUli* user, can both remain anonymous. Balancing under *Highfields* requires the

27   court to "compare the magnitude of the harms that would be caused to the [plaintiffs' and

28   defendants'] competing interests" by ordering that the defendant's identity be disclosed.

*Highfields*, 385 F. Supp. 2d at 976. "[T]he specific circumstances surrounding the speech serve to give context to the balancing exercise." *Art of Living*, 2011 WL 5444622 at *5 (quoting *Anonymous Online Speakers*, 661 F.3d at 1177). Furthermore, in making this assessment, the court must ask "whether disclosure of the defendant's identity would deter other critics from exercising their First Amendment rights." *Art of Living*, 2011 WL 5444622 at *7-*8 (citing *Highfields*, 385 F. Supp. 2d at 980-81).

### A. The @*NotUliBehringer* Account

The most troubling comment that Music Group attributes to @*NotUliBehringer* is the indirect suggestion that the company's CEO evaded taxes. (The other comments, as the court has noted, amount either to legitimate, "sardonic" commercial criticism, or a one-time eruption of the sophomoric.) First, this comment appears to be entirely about Music Group's CEO, rather than the company itself. For reasons that straddle defamation and First Amendment law, the remark probably cannot serve to ground Music Group's own defamation claim. *See Steam Press Holdings*, 302 F.3d 998 at 1004. The court does not discount the impropriety of the tax-evasion charge, or how troubling it is to be the comment's target. But this seems to have been a one-time piece of snideness. Viewed "in context," *Highfields*, 385 F. Supp. 2d at 975, amid the blizzard of invective from an obviously disgruntled person, the court is more concerned that breaching the defendant's anonymity for this single remark would unduly chill speech, and "deter other critics from exercising their First Amendment rights." *See Art of Living*, 2011 WL 5444622 at *7.

### B. The @*FakeUli* Account

The only comment that might have justified unmasking @*FakeUli's* identity is the one that accuses Music Group of encouraging "domestic violence and misogyny." That comment, on its face and read alone, is less like legitimate commercial criticism and more like the "fighting words and obscenity" that "are not protected by the First Amendment at all." *See Anonymous Online Speakers*, 661 F.3d at 1173, 1175-76. The comment is reproduced in Exhibit 2 to Music Group's underlying complaint. Music Group omitted that exhibit, apparently inadvertently, from their filings in this court. The court located the exhibit in the Western District of Washington's Electronic Case File. (The court thinks that this was appropriate. Music Group cited and discussed

ORDER ENFORCING SUBPOENA 14-80328 LB                                                                                              8

Exhibit 2, but did not actually file it here. The court would have asked Music Group to file it. And court records, including those of other courts, are proper objects of judicial notice. *See, e.g.,* Fed. R. Evid. 201(b) advisory comm. notes (judicial-notice rule covers court records); *Delagarza v. Tesoro Ref. and Mktg. Co.*, 2011 WL 4017967, *18 (N.D. Cal. Sept. 8, 2011) (judicially noticing filings in various courts).

The court found *@FakeUli's* "domestic violence and misogyny" comment. But there was more to the comment than Music Group reproduced here. (The court does not mean to imply any misconduct by Music Group.) Immediately following the words "domestic violence and misogyny" is a shortened URL. That URL is home to a short video, a comedic ad promoting one of Music Group's products: a roughly briefcase-sized metal box that is apparently an audio mixer. In the commercial — a domestic tableau not unreminiscent of early Mike Leigh — a woman tries to convince a man to leave their house for a social affair. He ignores her; he is too busy using his Music Group mixer. Growing irate, she begins to hurl things at him. He blocks these *seriatim* with his mixer, which the commercial's title indicates is "Bulletproof." He first blocks a coffee mug, then a wine bottle, then a chef's knife. Finally, emotions in crescendo and *denouement* surely at hand, she raises a gun and fires — only to be struck by the ricochet off the impregnable mixer. The hapless woman falls dead, and hammily. Falls, too, the curtain.

The point is that the video is comedic. (Whether funny or not is another question.) In this context, there is no way to see *@FakeUli's* comment as anything other than joking and ironic. It does not fall outside the First Amendment for being in poor taste.

## CONCLUSION

The court denies Music Group's motion to enforce the *@NotUliBehringer* and *@FakeUli* subpoenas. The court also denies Music Group's motion to transfer this proceeding to the Western District of Washington.

This disposes of ECF Nos. 1, 3, 16, and 21.

**IT IS SO ORDERED**.

Dated: March 2, 2015

LAUREL BEELER
United States Magistrate Judge

ORDER ENFORCING SUBPOENA 14-80328 LB                                                                                       9